ON RETURN TO REMAND
McMillan, judge.
This cause was remanded to the trial court for a determination on whether the defendant abandoned his appeal. 557 So.2d 854. If it was determined that the defendant had not done so, the trial court was instructed to appoint an attorney to represent him. Therefore, a licensed attorney was appointed to represent the defendant at the hearing on remand, during which the defendant stated that he wished to continue with his appeal. The trial court appointed the attorney who was representing the defendant at the hearing on remand to represent the defendant on his appeal.
The appellant argued that he was denied a fair trial because of the prosecutor’s repeated reference to his post-Miranda silence. In response, the State argued that this matter is not preserved for review or, in the alternative, that the prosecutor’s remarks constituted harmless error. The following transpired during the cross-examination of the appellant:
“Q. Mr. Anderson, these crimes occurred on June the 13th. Today is the first of November. So, you’ve had July, August, September, October, four months, to tell this story and today is the very first time it’s ever been told, isn’t it?
“MR. KNIZLEY: Your Honor, I object to him commenting on the Defendant’s right to not testify or give any remarks against himself before this day. He has no obligation or duty to do so.
“THE COURT: There is no duty for him to do so. I’ll agree.
“Q. There is no duty, but have you pri- or to this day in this court ever made anyone aware of what you say happened on June the 13th, 1988?
“MR. KNIZLEY: Your Honor, I object. He is — it’s his burden to prove him guilty and he doesn’t not have to come any time prior to now or even now to prove his innocence.
“THE COURT: Doesn’t have anything to do with the question he asked him. Overruled.
“A. What did you say now?
“Q. For the third time, since June the 13th, 1988, until today have you ever told the story that you just told from this stand to anybody from the police department?
“A. Police? I ain’t tell the police nothing.
“Q. That’s right. Did you tell anybody from the District Attorney's office?
“A. No.
“Q. You haven’t told anybody this story?
“A. No.
“MR. KNIZLEY: Your Honor, I object. That would call for him to comment on whether or not there’s been an attorney-client privilege.
“THE COURT: Overruled.
*1292 “A. No, I ain’t told nobody nothing.
“Q. You ain’t told nobody nothing, even though you, too, just like William Warren, are looking at three life sentences and one twenty-year sentence?
“A. I’m here. I’m going to tell it now. That’s — you know, that’s what I was thinking. I’m going to tell it now. I’m telling it.
“Q. But if you could—
“A. So, that’s it.
“Q. If what you’re saying is true, which is a big if, you could—
“MR. KNIZLEY: Your Honor, I object. I object to the form of the question. “THE COURT: Sustained.
“Restate your question.
“Q. If what you’re saying is true and could have helped you avoid three potential life sentences and one twenty-year sentence, why would you wait until now to try to help yourself?
“MR. KNIZLEY: Objection, speculation, calls for mental operation of the witness. It’s irrelevant and immaterial.
“THE COURT: Overruled.
“A. Oh, you trying to — I wouldn’t take a year, if I knew it was offered to me. So—
“MR. KNIZLEY: Your Honor—
“A. —ain’t no deal or nothing.
“Q. I know there ain’t no deal. Believe me. But my question, sir, with all due respect to you is why have you waited this long to tell this story, if it could have helped you long ago to have told it?
“MR. KNIZLEY: Your Honor, it assumes something that’s not in evidence. There’s no testimony that it could have helped him in any way to make a prior statement to the police.
“THE COURT: He has a right to ask him that.
“A. Why I waited so long?
“Q. That’s the question.
“A. ‘Cause I’m on trial now.”
Thereafter, during the re-direct examination of the appellant, defense counsel elicited testimony from the appellant concerning the substance of his rights pursuant to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that he was told that he had the right to remain silent. On re-cross examination of the appellant by the prosecutor, the following transpired:
“Q. Mr. Knizley asked you if you were advised that you had a right to remain silent; is that right?
“A. Yes.
“Q. And further that you had the right to an attorney; is that right?
“A. Yes.
“MR. GALANOS: And I would like the record to clearly reflect that we’re responding to something that was initiated by Defense Counsel.
“THE COURT: Go ahead.
“MR. KNIZLEY: Judge, I’d also like the record to reflect that I objected to the initial introduction of the evidence. Therefore, it became necessary for me to bring this out on redirect examination. “THE COURT: Good. Now, we have everything in the record. Go ahead.
“Q. So, you could have told — the police advised you of your rights, didn’t they?
“A. Yes.
“Q. And you could have told them on that day the same story you told here today?
“MR. KNIZLEY: Your Honor, I object to him exercising his constitutional right against self-incrimination and I object to the Prosecutor continually referring to that.
“THE COURT: Well, it is answering in kind, but Mr. Galanos, he’s already answered that once. So, I don’t know why we’re going back into it again.
“Q. What did you have to hide by— “MR. KNIZLEY: Objection, Judge.
“Q. —exercising your right to remain silent?
“MR. KNIZLEY: Objection, objection. That is so improper, that the man’s hiding something because he exercised a constitutional right, and I move for a mistrial on the grounds of prosecutorial misconduct and this Prosecutor knows he should not do that.
*1293 “THE COURT: I deny your motion, but I sustain your objection. Let’s move on.”
Finally, during the prosecutor’s closing argument to the jury, the following transpired:
“MR. GALANOS: He’s had four months to tell this story to help himself, and yet today is the first day. Never told the police, never told an investigator for any agency. You the jury are the first to hear it and the—
“MR. KNIZLEY: Your Honor, I want to object for the record of the Prosecutor continually referring to the Defendant’s right to remain silent.
“THE COURT: He hasn’t referred to the Defendant’s right to remain silent.
“MR. KNIZLEY: Judge, I—
“THE COURT: But he waived that right when he took the stand. So, let’s move on.
“MR. KNIZLEY: He did not waive it until that time, Judge—
“THE COURT: That is correct.
“MR. KNIZLEY: and he is referring to remarks previously to — previous to him taking the witness stand.
“THE COURT: Again, the record will be quite clear as to what’s transpired.”
Although the State argued that this matter is not sufficiently preserved for our review, the record clearly indicates that this line of questioning, concerning the appellant’s invocation of his right to remain silent, was pursued, and brought to the trial court’s attention, on a number of occasions. . ■
“Our examination of the record leaves no doubt that the trial judge was apprised of the basis for the objection with sufficient particularity to allow an informed decision to be made on the legal issue involved and now raised on appeal.... [T]he trial judge had previously sustained the defendant’s objection to that line of questioning and, at a later occasion, had indicated that he would allow the State to introduce the particular testimony that we find objectionable. ‘It is not necessary to repeat the specific grounds for an objection each time the question is asked, if a proper objection has been previously made to the same evidence as the trial court had been made fully aware of that objection.’ Anderson v. State, 354 So.2d 1156, 1160 (Ala.Cr.App.) cert. denied, 354 So.2d 1161 (Ala.1977).”
Marshall v. State, 570 So.2d 832 (Ala.Cr.App.1990).
Moreover, the prosecutor’s repeated introduction of the evidence of the appellant’s post-arrest silence does not constitute harmless error in this case.
“The defendant had a constitutional right to cut-off questioning at any time during the in-custody interrogation. Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
“ ‘Under the United States Constitution and the Constitution of the State of Alabama, an accused is guaranteed the right to remain silent. 5th Amendment, United States Constitution; Art. 1, § 6, Alabama Constitution (1901). A necessary component of the right to remain silent is that the accused’s silence cannot be used against him....
[[Image here]]
A person may assert his constitutional rights at any time. He may answer questions if he wishes, but he may stop at any time. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)....
“ ‘We hold that the defendant’s constitutional right to remain silent was violated by the state’s inquiry at trial about the defendant’s assertion of that right.’
“Ex parte Wiley, 516 So.2d 816, 817-18 (Ala.1987). ‘The standard is strict; virtually any description of a defendant’s silence following arrest and a Miranda warning will constitute a Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976) ] violation.’ United States v. Rosenthal, 793 F.2d 1214, 1243 (11th Cir.), modified on other grounds, 801 F.2d 378 (11th Cir.1986), cert. denied, 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987).”
Marshall v. State, supra at 833-834.
“Silence in the wake of these warnings may be nothing more than the arrestee’s *1294 exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, [422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975), at 177, 95 S.Ct. at 2137]. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.
“MR. JUSTICE WHITE, concurring in the judgment in United States v. Hale, supra, at 182-183 [95 S.Ct. at 2139-40], put it very well:
‘[W]hen a person under arrest is informed, as Miranda requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testi-mony_ Surely Hale was not informed here that his silence, as well as his words., could be used against him at trial. Indeed, anyone would reasonably conclude from Miranda warnings that this would not be the case.’ ”
Doyle v. Ohio, 426 U.S. 610, 617-619, 96 S.Ct. 2240, 2244-45, 49 L.Ed.2d 91 (1976). Moreover, this Court has previously held:
“It is the opinion of this court that Doyle, supra, and the considerable body of case law both prior to and in the wake of Miranda give the force and effect of law to the Miranda dictum. Thus, we hold that the use of the post-arrest, post-Miranda warning silence of the accused as evidence of his guilt is a violation of the Due Process Clauses of both the Fourteenth Amendment to the Constitution of the United States and Section Six of the Alabama Constitution of 1901. An accused has the constitutional right to remain silent following arrest and where the accused remains silent, his silence can be attributed to reliance on this right. That silence may not be used to support an inference that his trial testimony is a later fabrication. People v. McClure, 42 Ill.App.3d 952, 1 Ill.Dec. 617, 356 N.E.2d 899 (1976); United States v. Moore, 484 F.2d 1284 (4th Cir.1973). Counsel for the prosecution must scrupulously avoid all reference to or use of an accused’s assertion of his right to remain silent. United States v. Wycoff, 545 F.2d 679, 682 (C.A.Cal.1976).”
Houston v. State, 354 So.2d 825, 828 (Ala.Cr.App.1977), cert. denied, 354 So.2d 829 (1978).
While it is true that a comment on the post-arrest silence of a defendant may be eradicated by the prompt corrective action of the trial court and may be held to constitute harmless error “if the court is able to declare beyond a reasonable doubt that the error was harmless,” Houston v. State, supra, at 828, the error was not harmless in this case. In Houston v. State, this Court held that the prosecutor’s comments on the defendant’s post-arrest silence did not constitute harmless error, because on four occasions he made reference to the defendant's silence, and on only one of these occasions did the trial court sustain the appellant’s objection and instruct the jury. This Court held that if the trial court had “sustained the objections, instead of overruling, and admonished the jury that the argument was improper, the prosecutor’s comments would not have constituted reversible error.” Id., at 829. This Court quoted Chapman v. United States, 547 F.2d 1240, 1250 (5th Cir.1977), cert. denied, 431 U.S. 908, 97 S.Ct. 1705, 52 L.Ed.2d 393 (1977), wherein it was stated:
“When there is but a single reference at trial to the fact of defendant’s silence, the reference is neither repeated nor linked with defendant’s exculpatory story, and the exculpatory story is transpar *1295 ently frivolous and evidence of guilt is otherwise overwhelming, the reference to defendant’s silence constitutes harmless error....
“The infusion of ‘harmlessness’ into error must ■ be the exception, and the doctrine must be sparingly employed. A minuscule error must coalesce with gargantuan guilt, even where the accused displays an imagination of Pantagruelian dimensions.”
In the present case, the prosecutor initially introduced the objectionable evidence. The trial court sustained defense counsel’s first objection to this impropriety; however, the trial court, after having been apprised of the grounds of the objection, allowed the prosecutor to persist in eliciting this evidence. Thereafter, when defense counsel attempted to soften the blow by introducing testimony that the appellant’s silence was within his rights, the prosecutor was allowed to refer to the appellant’s post-arrest silence and asked what he had “to hide by exercising [his] right to remain silent.” Thereafter the trial court sustained the appellant’s objection, but overruled his motion for mistrial, which would have included the lesser prayer for a motion to exclude and possibly for curative instructions. Ex parte Marek, 556 So.2d 375, 378-79 (Ala.1989). The prosecutor again referred to the appellant’s silence during his closing argument and the trial court overruled defense counsel’s objection to “the prosecutor continually referring to the defendant’s right to remain silent.” Because of the pervasive nature of this error, we cannot conclude “that the error complained of [did not] probably injuriously [affect the] substantial rights of the [appellant].” Rule 45, A.R.App.P. Therefore, the conviction is reversed and this cause is remanded for a new trial.
OPINION EXTENDED; REVERSED AND REMANDED.
All the Judges concur.