**Kirk D. EAKLOR, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–9574.**

Court of Appeals of Alaska.

March 9, 2007.

Dallas S. Hargrave, Assistant Public Defender, Ketchikan, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Carolyn Perkins, Assistant District Attorney, and Stephen R. West, District Attorney, Ketchikan, and David W. Márquez, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Kirk D. Eaklor and another man, James Cannon, got into an argument over money. During this argument, Eaklor grabbed Cannon in a headlock and then punched him in the face, leaving Cannon with a red, swollen eye and a bleeding scratch below the eye. Based on this incident, Eaklor was charged with, and later convicted of, fourth-degree assault under AS 11.41.230(a)(1): recklessly causing physical injury to another person.

The term "physical injury" is defined in AS 11.81.900(b)(46) as "physical pain or an impairment of physical condition". In this appeal, Eaklor asserts two claims of error relating to this definition.

First, Eaklor contends that the evidence presented at his trial was insufficient to establish that his act of striking Cannon in the face caused "physical pain" to Cannon. Second, Eaklor contends that the trial judge, District Court Judge Kevin G. Miller, improperly prevented Eaklor's attorney from arguing to the jury that the State's evidence was insufficient to establish that Cannon suffered any "impairment" of his physical condition. Eaklor additionally argues that Judge Miller compounded this error by affirmatively instructing the jury that the defense attorney's argument on this point was wrong.

■ Eaklor's first contention turns on James Cannon's testimony about his encounter with Eaklor. Cannon testified that Eaklor punched him in the face. The prosecutor then asked Cannon, "Did it hurt when [Eaklor] hit you?" Cannon replied, "No, I think it was just more or less upsetting [to] me, because ... of the whole situation." The prosecutor then asked the follow-up question, "But it caused you some sort of pain?" Cannon answered, "Yes."

On appeal, Eaklor argues that when Cannon agreed that the punch caused him "some sort of pain", Cannon was referring to an emotional pain rather than the physical pain required for conviction of fourth-degree assault. But when we assess the sufficiency of the evidence to support a criminal conviction, we are obliged to view the evidence in the light most favorable to upholding the verdict.[1] Here, reasonable jurors could interpret Cannon's testimony to mean that he suffered physical pain from the punch (as well as being upset by the situation). Thus, the evidence was sufficient to establish this element of the offense.

■ We now turn to Eaklor's second contention, his argument concerning the element of "impairment of physical condition". This issue arose at Eaklor's trial when, following the conclusion of the State's case-in-chief, Eaklor's attorney asked the court to grant him a judgement of acquittal rather than allowing the case to go to the jury. In arguing for the directed acquittal, the defense attorney contended that a swollen eye and a bleeding scratch did not constitute an "impairment" of Cannon's physical condition. The prosecutor took the contrary position: *i.e.,* that Cannon's injuries qualified as an "impairment". Neither party cited any legal authority to support their position.

---

**1.** *Shafer v. State,* 456 P.2d 466, 469 (Alaska 1969).

Judge Miller ruled that the swelling of Cannon's eye and the bleeding scratch to Cannon's face constituted an "impairment" of Cannon's physical condition, and the judge therefore denied Eaklor's motion for a directed acquittal.

Eaklor's attorney then presented the defense case. After the defense rested, the parties discussed jury instructions. Neither party offered an instruction defining the phrase "impairment of physical condition". The jury was simply instructed according to the language of the fourth-degree assault statute. That is, the jurors were told that the State was obliged to prove that Eaklor caused "physical injury" to Cannon, and that physical injury "means physical pain or impairment of physical condition".

During the defense attorney's closing argument, he told the jurors that an "impairment" of physical condition "has to be something more than just damage to someone's face". The defense attorney asserted that the State was obliged to prove that Cannon suffered the kind of injury that "[made] something less operable" on Cannon's body.

Predictably, the prosecutor objected to this argument. In front of the jury (because neither party asked Judge Miller to excuse the jury during this discussion), the defense attorney and the prosecutor reiterated their respective positions on the meaning of "impairment of physical condition"—the same arguments they had presented when Eaklor made his earlier motion for a judgement of acquittal. At the end of this discussion, Judge Miller instructed the jury that "a scratch or anything that pierces the skin is [an] impairment of physical condition".

On appeal, Eaklor contends that Judge Miller overstepped his authority when he told the jurors that the defense attorney's interpretation of "impairment of physical condition" was wrong, and that any injury that pierces the skin is an "impairment" of the victim's physical condition.

Eaklor bases his position on the fact that the Alaska Statutes contain no further definition of the phrase "impairment of physical condition". Eaklor contends that, because the statutes do not further define "impairment of physical condition", attorneys are at liberty to argue any interpretation of this phrase that favors their clients—and trial judges are prohibited from interfering with this advocacy.

Thus, for example, in his opening brief to this Court, Eaklor repeats the argument he made to Judge Miller: that a criminal defendant "should be able to argue what an impairment of physical condition is [because this phrase] is not defined [in the statutes]". Eaklor further argues that it was improper for Judge Miller to give the jury *any* instruction regarding the meaning of this phrase. Eaklor contends that "when [another] statute or [existing] case law doesn't provide a definition for a term [in a statute], then [this term] is not defined as a matter of law." Thus, according to Eaklor, any instruction that Judge Miller might give to the jury concerning the meaning of "impairment of physical condition" would be (in Eaklor's attorney's words) "an erroneous statement of law"—because the judge would be "defin[ing] a material term that Alaska law does not define".

Eaklor's arguments misapprehend the distinction between issues of law and issues of fact, the division of authority between trial judges and juries, and a judge's duty to interpret the law when this is necessary to resolve the case being litigated.

The question presented here is whether the injuries that Eaklor inflicted on Cannon constituted an "impairment of [Cannon's] physical condition" within the meaning of AS 11.81.900(b)(46). Before Judge Miller sustained the State's objection, Eaklor's attorney was arguing to the jurors that, even if they believed that Eaklor had inflicted a bleeding scratch on Cannon's face, this injury did not constitute an "impairment" of Cannon's physical condition.

The meaning of a statute—in this case, the meaning of the statutory phrase "impairment of physical condition"—is a question of law.[2] Under our system of jus-

---

**2.** *See, e.g., Bailey v. Texas Instruments, Inc.,* 111 P.3d 321, 323–24 (Alaska 2005) ("The constitu-tionality of a statute and the meaning of statutory terms [are] questions of law...."); *Grimm v.*

tice, judges (not juries) decide what a statute means.

> [I]n a jury trial, issues of law are decided by the judge, not the jury. It is the jury's role to decide the facts of the case, but it is the judge's role to instruct the jury on the legal significance of the facts. Therefore, when lawyers disagree concerning the law that governs a case, they offer arguments to the trial judge, not to the jury.

*Cornwall v. State,* 915 P.2d 640, 647 (Alaska App.1996).

Because of this fundamental tenet of our system of justice, Eaklor's attorney was not entitled to ask the jurors to adopt his own particular interpretation of the statutory phrase "impairment of physical condition". If this phrase needed to be clarified in order to resolve Eaklor's case, it was Judge Miller's job to construe the statutory language—and it was the defense attorney's obligation to present his arguments to Judge Miller, not to the jury.

In this case, the defense attorney's departure from proper procedure is even more striking because, as explained above, Judge Miller had already adopted a contrary interpretation of the statute (when the judge denied Eaklor's motion for a judgement of acquittal). Under these circumstances, Judge Miller was authorized to stop the defense

attorney from arguing to the jury that the statutory language meant something different.

■ Moreover, because it now appeared (from the defense attorney's argument) that the jury's decision in Eaklor's case might well hinge on this question of law, Judge Miller was not only authorized but obliged to instruct the jury concerning the proper interpretation of the statutory language. As our supreme court noted in *McKee v. State,* when the statutory language defining an element of a crime "is susceptible of differing interpretations, only one of which is a proper statement of the law", and when the defendant's guilt or innocence may turn on the jury's understanding of this element, "an instruction [on the meaning of this element] must be given". 488 P.2d 1039, 1043 (Alaska 1971).

In short, Eaklor's objections to Judge Miller's actions have no merit.

One caveat: We express no opinion as to whether Judge Miller was correct when he interpreted the phrase "impairment of physical condition" to include any scratch that pierces the skin. Our examination of the case law from other jurisdictions shows that courts have reached differing opinions as to whether statutory language of this sort encompasses all minor injuries or instead requires proof of a more significant injury.[3]

---

*Wagoner,* 77 P.3d 423, 427 (Alaska 2003) ("Questions regarding the application, interpretation, and constitutionality of a statute are questions of law."); *Hammock v. State,* 52 P.3d 746, 751 (Alaska App.2002) ("The interpretation of a statute is a question of law....").

**3.** There is considerable out-of-state authority interpreting "impairment of physical condition". In jurisdictions that have statutes similar to Alaska's, courts have ruled that scratches, small cuts, and bruises qualify as "impairments" of physical condition. *See, e.g., Tucker v. State,* 725 N.E.2d 894, 897–98 (Ind.App.2000) (red marks, bruises, and minor scratches constitute "impairment of physical condition", even if the victim testifies that the injury did not hurt); *State v. Slaughter,* 691 N.W.2d 70, 76 (Minn.2005) (scratches caused by necklaces being torn from the victim's neck qualified as "impairment of physical condition"). In jurisdictions with statutes that arguably set a slightly higher threshold for physical injury ("impairment of physical condition or *substantial* pain"), courts have tended to reverse convictions involving this sort of injury. *See,*

*e.g., People v. Prosser,* 130 A.D.2d 972, 516 N.Y.S.2d 559 (1987) (holding that linear abrasions on the side of the victim's neck did not qualify as "physical injury" when the victim testified that he suffered only slight pain); *State v. Rice,* 48 Or.App. 115, 616 P.2d 538, 539 (1980) (a slight cut from flying glass caused by the defendant's act of breaking the rear window of a vehicle with a pickaxe did not qualify as "physical injury" when the victim testified that she felt no pain and did not even realize that she had been cut until later, when somebody told her). But there are exceptions. *See, e.g., Striplin v. City of Dothan,* 607 So.2d 1285, 1287 (Ala.Crim. App.1992) (the element of "physical injury" was satisfied by evidence that the victim was kicked several times in the groin, even though the victim testified that he suffered pain for only a second and there were no resulting bruises, scratches, or abrasions). At least one court has hinged its finding of "physical injury" on the type of conduct that led to the injury—holding that a bleeding scratch on the victim's arm, sustained during a domestic confrontation, qualified as "impairment of physical condition", even though bruises

We do not resolve this issue, and need not explore it further, because Eaklor makes no attempt to show that Judge Miller's interpretation of the statutory language was wrong. Eaklor's sole argument is that Judge Miller exceeded his lawful authority when the judge adopted *any* interpretation of the phrase "impairment of physical condition". As we have explained, this argument has no merit.

The judgement of the district court is AFFIRMED.

and slight cuts sustained during "violent dancing" did not (because dancing is an activity that is a "customary part of modern day living"). *See Cronin v. West Whiteland Township,* 994 F.Supp. 595, 601 (E.D.Pa.1998) (distinguishing *Commonwealth v. Kirkwood,* 360 Pa.Super. 270, 520 A.2d 451, 454 (1987)). An Oregon appeals court has interpreted "impairment of physical condition" to require evidence of the victim's diminished ability to use their body or one of its organs—a definition quite similar to the one that Eaklor advanced in this case. *See State v. Higgins,* 165 Or.App. 442, 998 P.2d 222, 224–25 (2000) (reversing a wife's conviction for fourth-degree assault based on her acts of shaking, scratching, and slapping her husband and pushing him out of bed, when there was no evidence that the husband experienced pain, and when his only injuries were six red scrape marks on his neck and arm that did not bleed and did not require medical attention). The Oregon court noted, however, the existence of other decisions holding that a swollen lip or swollen eye would constitute an "impairment of physical condition" if the injury impaired the ordinary functioning of that body part.